# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RONA S. JOHNSON,              ) <br> ) <br> Plaintiff,         ) <br> ) <br> v.                            ) <br> ) <br> CAROLYN W. COLVIN, Acting     ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant.        ) <br> ) | No. 14 C 814 <br><br> Magistrate Judge <br> Michael T. Mason |

## MEMORANDUM OPINION AND ORDER

Claimant Rona Johnson ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. (Dkt. 7.) This Court hereby construes Claimant's brief in support of reversing the decision of the Commissioner (Dkt. 25) as a motion for summary judgment. For the reasons stated below, Claimant's motion for summary judgement is granted and the Commissioner's motion for summary judgment (Dkt. 29) is denied. The decision of the Commissioner is reversed, and the case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

I.     **PROCEDURAL HISTORY**

On January 10, 2011, Claimant filed an application for DIB, alleging a disability onset date of December 1, 2003. (R. 139-40.) The claim was denied initially on March 7, 2011, (R. 67), and upon reconsideration on May 23, 2011. (R. 68.) On June 3, 2011, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R. 82-84.) Claimant had since amended her onset date to September 29, 2009. (R. 293.) An administrative hearing was held on June 12, 2012. (R. 28-52.) At that hearing, Claimant, who was represented by counsel, appeared and testified. (*Id.*) A vocational expert ("the VE") also appeared and testified. (*Id.*)

On September 4, 2012, as explained in more detail below, the ALJ issued a written decision denying Claimant's claim for benefits. (R. 11-22.) The Appeals Council denied review, (R. 1-3), and this action followed.

## II. BACKGROUND

On August 25, 2008, Claimant underwent a sleep study. (R. 580-81.) There was one apnea[1] and sixty-five hypopneas[2] seen for an overall apnea-hypopnea index of fourteen events per hour. (R. 580.) Claimant snored and her lowest oxygen saturation was eighty-four percent. (*Id.*) She also had periodic limb movement, at thirty-three events per hour. (*Id.*) Claimant was diagnosed with moderate sleep apnea with periodic limb movement. (R. 581.) On December 22, 2008, Claimant was examined by Dr. June Kim for a checkup. (R. 299-300.) Dr. Kim noted that Claimant had a history of cardiomyopathy, hypertension, and anemia. (R. 299.) Dr. Kim assessed that Claimant

---

[1] Apnea is a "cessation of breathing." *Dorland's Medical Dictionary* http://www.dorlands.com (last visited May 11, 2016) [hereinafter *Dorland's*].
[2] Hypopnea is an "abnormal decrease in the depth and rate of breathing." *Dorland's*.

suffered from anemia[3], cardiomyopathy[4], diabetes mellitus type 2, and back pain. (*Id.*) On February 12, 2009, Claimant was examined for a follow-up with Dr. Gaile Sabaliauskas. (R. 763-64.) Dr. Sabaliauskas assessed that Claimant had sleep apnea, chest discomfort, tightness, dizziness, diabetes mellitus type 2, dyspnea[5], fatigue/malaise, hypertension – benign, pulmonary embolus[6], and tachycardia[7]. (R. 764.) Claimant was prescribed a continuous positive airway pressure ("CPAP")[8] machine for her sleep apnea; however, she frequently complained of problems with the machine. (R. 1119, 1145, 1159, 1176.) Throughout the period at issue, Claimant's chronic anemia was also an ongoing problem and records frequently documented her complaints of fatigue. (R. 299, 307-16, 369, 388, 419, 479, 493, 510-15, 541, 570-71, 589-90, 634, 685, 690, 712-13, 727-36, 772, 760-61, 776, 782, 963-76, 1112, 1157 .)

On June 14, 2011, pulmonologist, Dr. Linda Chan, completed a Sleep Disorder Residual Functional Capacity ("RFC") Questionnaire. (R. 1033-35.) Dr. Chan indicated that Claimant suffered from mild sleep apnea, anxiety, and insomnia. (R. 1033.) Dr. Chan also indicated that Claimant refused CPAP, dental appliance, surgery and was

---

[3] Anemia is "a reduction below normal in the concentration of erythrocytes or hemoglobin in the blood, measured per $mm^3$ or by volume of packed red cells per 100 mL of blood; it occurs when the equilibrium is disturbed between blood loss (through bleeding or destruction) and blood production." *Dorland's*.
[4] Cardiomyopathy is "a general diagnostic term designating primary noninflammatory disease of the heart muscle, often of obscure or unknown etiology and not the result of ischemic, hypertensive, congenital, valvular, or pericardial disease." *Dorland's*.
[5] Dyspnea is "breathlessness or shortness of breath; difficult or labored respiration." *Dorland's*.
[6] Pulmonary embolus "a mass," located in the lung(s) "which may be a blood clot or some other material, that is brought by the bloodstream through the vasculature, lodging in a vessel or bifurcation too small to allow it to pass, obstructing the circulation." *Dorland's*.
[7] Tachycardia is "excessive rapidity in the action of the heart; the term is usually applied to a heart rate above 100 beats per minute in an adult and is often qualified by the locus of origin as well as by whether it is paroxysmal or nonparoxysmal." *Dorland's*.
[8] Continuous positive airway pressure is "a method of positive pressure ventilation used with patients who are breathing spontaneously, in which pressure in the airway is maintained above the level of atmospheric pressure throughout the respiratory cycle. The purpose is to keep the alveoli open at the end of exhalation and thus increase oxygenation and reduce the work of breathing." *Dorland's*.

possibly a malinger and needed a psychiatric consultation. (*Id.*) Dr. Chan then indicated that Claimant could sit/stand for more than two hours at one time and could sit and stand/walk for at least six hours in an eight hour workday. (R. 1034.) Dr. Chan also indicated that Claimant did not need a job that permitted shifting positions at will and did not need unscheduled breaks. (*Id.*) Dr. Chan further indicated that Claimant could frequently lift/carry up to fifty pounds in a competitive work situation. (R. 1035.)

At the administrative hearing, Claimant testified that she was 5'4" tall and weighed 160 pounds. (R. 31.) She had not completed any work that lasted longer than three months since September of 2009, and she last held a full time job in 2001 as a newspaper articles clipper. (R. 32-33.) In that job, she would sit while clipping articles and sometimes lifted heavy magazines. (R. 33.)

Claimant stated that she slept about two hours per night and took three to four naps during the day. (R. 38, 43.) Claimant explained that she had a CPAP machine, but was about to undergo another sleep study because she still had problems sleeping. (R. 34.) Her current CPAP machine filled her stomach with air. (*Id.*) She suffers from diabetes and took two types of medications; however, her diabetes remained uncontrolled. (R. 34, 41.) Claimant also saw a psychiatrist for her insomnia and stress. (R. 34-35.) She felt stressed every day due to her symptoms. (R. 42.)

Claimant also testified that she had tachycardia and when she walked she noticed an elevated heart rate, which caused her to become dizzy and nauseated. (R. 41.) She had difficulties leaving her home because of her dizziness and nausea. (R. 44.) Claimant further testified that she had anemia which caused her blood count to be low. (R. 46.) The biggest obstacle she would face going to work every day was that

4

she could not sleep and would fall asleep while walking. (R. 47.) She also stated that she took many medications and experienced side effects such as dizziness. (*Id.*)

Claimant testified that she could not walk far because she had shortness of breath. (R. 35.) She could not stand long because her back would ache due to her scoliosis and that she could not sit long due to shooting pain. (R. 36-37.) Claimant has experienced back pain every day since the 1990's, which lasts from a couple of minutes to a couple of hours. (R. 42-43.) Claimant could sit for about twenty minutes. (R. 37.) She could lift about a gallon of milk and had problems climbing stairs. (*Id.*) She also had difficulty bending, stooping, crouching, crawling, and kneeling, and she felt she needed a cane because she had problems standing. (R. 37-38.)

Claimant went grocery shopping once per week. (R. 43.) While shopping she needed to lean on the cart, and while brushing her teeth she needed to sit down. (R. 38.) She had difficulty reaching overhead because of her back pain and had problems using her hands. (*Id.*) She could prepare herself a sandwich but could not do dishes, laundry, vacuum, dust, mop, sweep, take out the garbage, or yard work. (R. 38-39.) She stated that she had help making her bed and ironing her clothes, and asks her family members to check on her while she used the restroom in case she passed out from being dizzy. (R. 38, 46.) She did not drive, attend church or club organizations, or go to concerts, ball games, or movies. (R. 39.) She used public transportation and occasionally went out to dinner with her sister. (R. 39-40.) She liked to read but lately could not read due to her glaucoma. (R. 40.) She also did not read because she was disinterested due to her lack of sleep and difficulty concentrating. (R. 44.)

Vocational Expert ("VE") Cheryl Hosieth testified that Claimant's past relevant work included press clipping cutter. (R. 49.) Next, the ALJ asked the VE whether the following hypothetical person could perform any of Claimant's past work. (*Id.*) The hypothetical person would be of the same age, education, and work experience as Claimant, and have the following non-exertional limitations: can lift and carry ten pounds occasionally, less than ten pounds frequently; stand/walk a total of two hours during an eight hour workday; sit at least six hours during an eight hour workday; never climb ladders, ropes, or scaffolding; occasionally climb ramps or stairs; occasionally balance, stoop, crouch, kneel, and crawl; and should avoid concentrated exposure to lung irritants and work hazards such as heights or dangerous moving machinery. (*Id.*) The VE responded that the hypothetical person could perform Claimant's past relevant work, as well as other jobs, such as general office clerk, information clerk, and order clerk. (R. 49-50.)

The ALJ then asked the VE if the individual could perform the past relevant work if she was limited to simple, repeated, and routine tasks. (R. 50.) The VE responded that she could, and that she could also perform the other listed jobs. (*Id.*) The ALJ then asked the VE if the individual could be off task twenty percent of the time or take naps on and off as needed during the workday. (*Id.*) The VE responded that work would be precluded in both scenarios. (*Id.*) The ALJ then asked the VE if it would be acceptable if the individual needed a sit/stand option after sitting for forty-five minutes and standing for one to two minutes. (*Id.*) The VE responded that the sit/stand option would be allowed with the aforementioned jobs. (*Id.*)

**III. ANALYSIS**

6

### A. Standard of Review

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel,* 530 U.S. 103, 106-07 (2000). Under such circumstances, the district court reviews the decision of the ALJ. (*Id.*) Judicial review is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching her decision. *Nelms v. Astrue,* 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue,* 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). Thus, judicial review is limited to

determining whether the ALJ applied the correct legal standards and whether there is substantial evidence to support the findings. *Nelms,* 553 F.3d at 1097. The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g)

      **B.**      **Analysis under the Social Security Act**

To qualify for Social Security benefits, a claimant must be under a disability within the meaning of the Act. 42 U.S.C. § 423(a)(1)(E). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002). Pursuant to the Act, a claimant is disabled only if his physical or mental impairments are of such severity that he is unable to do his previous work and cannot, when "considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A). Another agency requirement to receive disability insurance benefits is that a claimant must show he was disabled on or before the date his insured status expired. *See* 20 C.F.R. § 404.130 for definition of disability insured status; *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).

Under the authority of the Act, the Social Security Administration ("SSA") has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a). The ALJ is required to make the following inquiries:

1. Is the claimant presently engaging in substantial gainful activity? 20 C.F.R. § 404.1572 *et seq*.

2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?

3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations? *See* 20 C.F.R. § Pt. 404, Subpt. I, App. 1.

4. Is the claimant unable to perform his or her former occupation?

5. Is the claimant unable to perform any other work?

20 C.F.R. § 404.1520(a)(4); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). A negative answer at any point, other than step three, ends the inquiry and leads to a determination that a claimant is not disabled. *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir. 1985). The claimant has the burden of establishing steps one through four. At step five the burden shifts to the SSA to establish that the claimant is capable of performing work. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

Here, the ALJ applied the five-step sequential evaluation process and ultimately found Claimant not disabled under the Act. (R. 22.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity during the period from her amended onset date of September 29, 2009 through her last date insured of September 30, 2011. (R. 16.) At step two, the ALJ found that Claimant had the severe impairments of hypertension/history of aortic valve stenosis with mild shortness of

9

breath, obesity, non-insulin dependent diabetes mellitus, history of calcaneal stress fracture (heel bone), and mild scoliosis at the thoracic spine. (*Id.*) At step three, the ALJ found that through the last date insured, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (R. 17.)

Before step four, the ALJ found that Claimant had the RFC to perform sedentary work. (R. 19.) The ALJ also found that Claimant's RFC was further limited to having the option to sit and stand (sit 45 minutes and then stand for 1-2 minutes); never climb ladders, ropes, and scaffolds; no more than occasionally climb stairs/ramps, balance, stoop, kneel, crouch, and crawl; and should avoid concentrated exposure to lung irritants and work hazards (including unprotected heights and dangerous moving machinery). (*Id.*) Finally, at step five, the ALJ found that Claimant was capable of performing past relevant work as a press clipping cutter, and that there were jobs that existed in significant numbers in the national economy that Claimant could perform. (R. 21-22.) Specifically, the ALJ found that Claimant could work as a general office clerk, information clerk, or order clerk. (R. 22.) Because of this determination, the ALJ found that Claimant was not disabled under the Act. (*Id.*)

Claimant now argues that the ALJ made three errors. First, Claimant argues that the ALJ failed to properly evaluate her sleep apnea, obesity, and anemia in the RFC. Second, Claimant argues that the ALJ did not provide a proper basis for the RFC. Lastly, Claimant argues that the ALJ failed to properly analyze her credibility. The Court concludes that the ALJ did not properly evaluate Claimant's impairments and failed to

10

support Claimant's RFC assessment with substantial evidence. Because these conclusions require reversal, the other alleged errors need not be addressed at this time.

### C. The ALJ Failed to Properly Evaluate Claimant's Impairments.

Claimant asserts that the ALJ's RFC assessment was erroneous because she failed to properly evaluate her sleep apnea, obesity, and anemia in the RFC determination, and failed to consider her impairments in combination. The Court agrees.

The RFC is an administrative assessment of what work-related activities an individual can perform despite her limitations. SSR 96-8p; *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001); 20 C.F.R. § 404.1545. In assessing the claimant's RFC, the ALJ must consider both the medical and nonmedical evidence in the record. (*Id.*) In addition, the ALJ has the sole responsibility for evaluating a claimant's RFC based on the record as a whole. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); 20 C.F.R. § 404.1545(a)(1); *see also* 20 C.F.R. § 404.1546.

First, Claimant contends that the ALJ failed to consider the negative effects of her obstructive sleep apnea, and to explain why she rejected the allegations of her sleep apnea-related limitations. (Pl.'s Br. at 5-7.) In her decision, the ALJ concluded that Claimant's obstructive sleep apnea was non-severe because there was no evidence of any work-related limitations associated with the condition and the evidence reflected that Claimant did not compliantly wear her CPAP mask. (R. 17.) The ALJ afforded some weight to Dr. Chan's opinion; though she noted that Dr. Chan did not provide information pertaining to the frequency of treatment she provided, nor was there

11

any discussion of CPAP effectiveness. (R. 21.) The ALJ also pointed out Dr. Chan's comment that Claimant refused CPAP treatment, dental appliance, and surgery, and was possibly a malingerer. (R. 21.)

But, the record is clear that Claimant suffered from moderate obstructive sleep apnea with periodic limb movements. (R. 580-81.) It is also documented that Claimant suffered from fatigue, daytime hypersomnolence[9], poor concentration, decreased energy and alertness, and napped throughout the day. (R. 34, 699, 728-37, 1145-46, 1148-49.) All of these symptoms could reasonably have a negative effect on Claimant's RFC. While the ALJ only has to include in the RFC impairments that she finds credible, *see Simila v. Astrue,* 573 F.3d 503, 520-21 (7th Cir. 2009), the ALJ failed to explain why Claimant's well documented sleep apnea symptoms did not affect her RFC or were otherwise not credible.

Further, the ALJ failed to inquire as to why Claimant was not using her CPAP machine before drawing a negative inference from non-compliance. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference.") In this case, Claimant contends and indeed it is evident throughout the record, that she did not use her CPAP machine because it was ineffective, and she was intolerant due to the machine pushing air into her stomach and eyes and waking her throughout the night. (Pl.'s Br. at 6-7; R. 34, 699, 728, 1119.) It is also documented that Claimant's CPAP machine had to be re-calibrated on occasion.

---

[9] Hypersomnolence is "excessive sleeping or sleepiness, as in any of a group of sleep disorders with a variety of physical and psychogenic causes." *Dorland's*.

The ALJ failed to inquire or consider these reasons why Claimant did not use her CPAP machine. The ALJ was required to do so before drawing a negative inference that Claimant's obstructive sleep apnea was non-severe and did not negatively affect her RFC.

Next, Claimant contends that the ALJ failed to consider the combined impact of her obesity and sleep apnea. (Pl.'s Br. at 7-8.) The Commissioner responds that Claimant was not obese; rather, she was overweight weighing 160 pounds with a BMI of 27.5, and thus did not trigger the obesity analysis. (Def. Mem. at 5.) The Commissioner also contends that the ALJ limited Claimant to sedentary work with postural limitations, in part due to her obesity. (*Id.*)

The ALJ is required to consider a claimant's obesity in evaluating the severity of her other impairments. *Castile v. Astrue*, 617 F.3d 923, 928 (7th Cir. 2010) (citing SSR 02-1p). However, a "claimant must articulate how her obesity limits her functioning and exacerbates her impairments. . . . This court has repeatedly excused the harmless error of an ALJ who fails to explicitly address a claimant's obesity but arrives at a final decision after reviewing the medical opinions of physicians familiar with the claimant's obesity." *Hisle v. Astrue*, 258 F. App'x 33, 37, 2007 WL 4439843, at *4 (7th Cir. 2007).

The Commissioner's first argument on this issue, that Claimant was not in fact obese, is unpersuasive. The ALJ explicitly found that Claimant was 5'4, 160 pounds, and obese. (R. 21.) She also found Claimant's obesity to be a severe impairment. (R. 16.) As such, the obesity analysis was triggered and the ALJ was required to include the effects of Claimant's obesity in her RFC assessment.

13

Although the Commissioner noted that she considered Claimant's obesity when limiting her to sedentary work with postural limitations, the ALJ failed to consider Claimant's obesity in combination with her other impairments. The Seventh Circuit requires an ALJ to consider a claimant's obesity in evaluating her ability to work generally. *See Browning v. Colvin*, 766 F.3d 702, 706 (7th Cir. 2014) (explaining that morbid obesity may make a person unable to perform even sedentary jobs). Here, it is documented that Claimant was obese and that it contributed to her sleep apnea because, on two separate occasions, Dr. Chan recommended that Claimant lose weight as a plan to treat her sleep apnea. (R. 581, 583.) The record also reflects that Claimant suffered from fatigue and sleepiness, which may be attributable to her obesity and sleep apnea. Thus, the ALJ should have considered the negative effects of Claimant's obesity in combination with her sleep apnea. And, after considering the impairments in combination, the ALJ was then required to include any resulting functional impairments in her RFC assessment.

Next, Claimant contends that the ALJ failed to note or discuss Claimant's diagnosis of anemia in combination with her sleep apnea, obesity, and other impairments. (Pl.'s Br. at 8.) The Commissioner responds that the ALJ both noted and discussed Claimant's anemia diagnosis and that Claimant's failure to address the ALJ's finding on this issue constitutes forfeiture. (Def. Mem. at 5.)

The Commissioner's argument is again unpersuasive. The ALJ opined that Claimant "received a blood transfusion due to anemia secondary to menorrhagia resulting from her fibroids," and that "since that time, there is no indication that the claimant has sought or required further treatment for this condition." (R. 17.) However,

14

the ALJ either mistakenly mischaracterizes the record or ignores the other medical evidence regarding Claimant's anemia altogether. While an ALJ need not mention every piece of evidence in her opinion, she cannot ignore a line of evidence that suggests a disability. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010). Additionally, an ALJ is required to evaluate every medical opinion in the record. 20 C.F.R. § 404.1527(d). *See Young*, 362 F.3d at 1001.

Here, the ALJ neglected to mention that outside of Claimant's December 2009 hospitalization for anemia, the record is filled with other instances documenting Claimant's anemia. As early as May 2005, medical documentation revealed that Claimant suffered from anemia. (R. 541.) Further, subsequent medical records reveal that Claimant continued to suffer from anemia (including hospitalization requiring blood transfusions in November and December 2009), and also frequently complained of fatigue, a common symptom of anemia.[10] (R. 369, 388, 479, 493, 510-15, 541, 634, 685, 690, 713, 772, 776, 782, 963-76, 1112.) It was also noted that Claimant's severe anemia may explain her intermittent shortness of breath and chest discomfort. (R. 713.) The ALJ may not ignore the entire line of evidence that suggests Claimant suffered from anemia, and she cannot claim that there was no evidence of an ongoing disorder before or subsequent to Claimant's December 2009 hospitalization, when the record indicates otherwise.

---

[10] Anemia signs and symptoms vary depending on the cause of your anemia. They may include: fatigue, weakness, pale or yellowish skin, irregular heartbeats, shortness of breath, dizziness or lightheadedness, chest pain, cold hands and feet, headache. *Mayo Clinic* http://www.mayoclinic.org/diseases-conditions/anemia/symptoms-causes/dxc-20183157 (last visited May 11, 2016).

For all of these reasons, we conclude that the ALJ failed to properly consider Claimant's sleep apnea, obesity and anemia in fashioning the RFC. On remand, the ALJ shall properly consider these impairments both singly and in combination.

### D. The ALJ Failed to Properly Support Claimant's RFC Assessment with Substantial Evidence.

Claimant also argues that the ALJ failed to sufficiently articulate the medical basis behind her RFC determination. (Pl.'s Br. at 10.) Specifically, Claimant takes issue with the ALJ's lack of explanation for her determination that Claimant could sit for forty-five minutes. (*Id.*) The Commissioner responds that substantial evidence supports the ALJ's RFC finding, and that the regulations do not require that the RFC have a medical basis; rather, the RFC is based on all the relevant evidence in the case record.

As mentioned above, the Commissioner is correct that the ALJ has the sole responsibility for evaluating a claimant's RFC based upon the record as a whole. *See Young*, 362 F.3d at 1001; 20 C.F.R. § 404.1545(a)(1); *see also* 20 C.F.R. § 404.1546. However, the ALJ is required to support her RFC analysis with substantial evidence such as conforming testimony or a medical source. *See Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 702 (7th Cir. 2009) (holding that determinations must be based on testimony and medical evidence in the record). So, while it is the ALJ's responsibility to determine Claimant's RFC, she must do so based upon the medical evidence. S*ee Burke v. Colvin*, No. 11 C 50001, 2013 WL 5288155, at *10 (N.D. Ill. Sept. 17, 2013) citing 20 C.F.R. § 404.1545(a)(3); *Clifford*, 227 F.3d at 873 (holding a claimant's RFC must be based upon the medical evidence and other evidence in the record). In addition, an ALJ must not substitute her own judgment for a physician's opinion without relying on other medical evidence or authority in the record*. Clifford*, 227 F.3d at 870.

Here, as it relates to Claimant's ability to sit, the ALJ noted that "[C]laimant maintained that she could not sit for twenty minutes at a time, but there was no medical evidence to support such a restrictive physical limitation." (R. 19.) Considering those assertions, the ALJ limited Claimant to sedentary work, with a limitation of sitting forty-five minutes and then a standing option for one to two minutes. (*Id.*) Although the ALJ noted that she based her RFC assessment on the Claimant's own assertions, she failed to explain how she found that Claimant could sit for forty-five minutes when Claimant asserted she could sit no more than twenty minutes, or how a one to two minute standing option was sufficient for Claimant. The ALJ cited no contradictory testimony that refuted Claimant's assertion of her sitting limitation, nor did she provide any contrary medical evidence that she relied on. As such, the ALJ failed to build a logical bridge from the facts to her analysis to support her RFC assessment. Further, "the ALJ's are not permitted to construct a 'middle ground' RFC without a proper medical basis. Additionally, under 96-8p, ALJ's are required to explain how they arrived at their conclusions regarding a Claimant's RFC." *Norris v Astrue*, 776 F. Supp. 2d 616, 637 (N.D. Ill. 2011). On remand, the ALJ must articulate a proper basis for her RFC determination, particularly as it relates to Claimant's ability to sit or her need to shift positions.

Because the ALJ's decision otherwise requires reversal, Claimant's third alleged error regarding credibility need not be addressed at this time. We note, however, that the SSA recently updated its guidance about evaluating symptoms in disability claims. *See* SSR 16-3p, 2016 WL 1119029 (effective March 28, 2016). The new ruling eliminates the term "credibility" from the Administration's sub-regulatory policies to

"clarify that subjective symptom evaluation is not an examination of the individual's character." (*Id.* at *1.) On remand, the ALJ should re-evaluate Claimant's subjective symptoms in light of SSR 16-3p.

## IV. CONCLUSION

For the foregoing reasons, Claimant motion for summary judgment is granted and the Commissioner's cross-motion for summary judgment is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Opinion. It is so ordered.

_____
**Michael T. Mason
United States Magistrate Judge**

**Dated: June 1, 2016**